

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

JOHN WILLIAMS, et al.,

        Appellants/Cross-Appellees,

v.                                  Civil Action No. 4:17cv109

COLONIAL PENNIMAN, LLC,

        Appellee/Cross-Appellant.

## OPINION & ORDER

This matter comes before the Court on appeal from the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"). Appellants/Cross-Appellees John and Maxine Williams ("Appellants" or the "Williamses") and Appellee/Cross-Appellant Colonial Penniman, LLC ("Appellee" or "Colonial Penniman") both appeal certain decisions of the Bankruptcy Court. Docs. 1, 3. For the reasons stated herein, the Court **REMANDS** this matter to the Bankruptcy Court for further proceedings regarding the management of the bankruptcy estate but otherwise **AFFIRMS** the remainder of the opinion in two (2) particular respects: (1) **FINDING** that the Deed of Easement permits all uses "for the benefit of" Appellee and (2) **FINDING** that Appellee's successors in interest will have the same rights in the Deed of Easement as Appellee has. The Court's rulings on these issues are independent of and do not alter the zoning requirements of James City County as they apply to the Appellee's property, nor do they invade the jurisdiction of the bankruptcy court to manage this pending bankruptcy proceeding including the requirements in contracts for sale in the bankruptcy estate.

## I. BACKGROUND

### A. Facts

Appellee acquired an 8.42 acre parcel of land on the James River (the "Property") from Appellants on January 15, 2007. Adversary Proceeding R. (Doc. 5-2, hereinafter "R.") at 15, 23–25 (the "Deed of Easement"), 45. As part of that transfer, Appellee and Appellants entered into a deed of easement with the Property as the dominant estate and Appellants' remaining property as the subservient estate. See id.

The easement "is twenty-five [25] feet wide and two hundred fifty [250] feet long, and runs to the Property from the end of a cul-de-sac 'located on the eastern end of Manion Drive' in Williamsburg, Virginia." R. at 422 (quoting Deed of Easement).[1] It conveys the easement to "the Grantee, its successors and assigns, and to the owners" of lots subdivided from the Property, collectively called the "Grantees." Deed of Easement. It also contemplates that the owner may subdivide the Property into "no more than three [3] riverfront lots and one [1] interior lot . . . ." Id.

The Deed of Easement grants several rights. First, it grants "right of ingress and egress to and from the Dominant Parcel across the Subservient Parcel, in areas described above, to Manion Drive." Id. Second, it grants "the right to install, construct, maintain, and repair all underground utilities . . . ." Id. Third, it grants the right to "improve the current gravel driveway within the area of easement without destruction or mutilation of the trees currently lining the driveway." Id. Fourth and finally, it grants the right to "establish and erect an entry way gate or decorative wall at the northwest entrance to the driveway from Manion Drive." Id.

---

[1] Neither Party disputes that this property is in James City County despite having a Williamsburg address. See Doc. 6 at 8; Doc. 10 at 3.

The Deed of Easement also contains two (2) other provisions relevant to this proceeding. First, the Grantees must maintain the existing tree line: "a row of seven (7) magnolia trees spaced approximately twenty-five feet (25') apart on the southwest boundary of the driveway; and a row of twenty-two (22) Layland cypress trees spaced approximately twelve feet (12') apart along the northeast boundary of the driveway." Id. Second, "[t]he right of way shall only be for the benefit of the Grantors, or either, and Grantees." Id.

After Appellee subdivided the Property for development, the Parties began disputing the scope of the easement, and Appellants used barriers to restrict access. R at 15, 45; Plaintiff's Ex. 10, 11.[2] At first, Appellants placed a rope barrier with hanging chains fastened to wooden posts in front of the easement. Plaintiff's Ex. 10, 11. Subsequently, they placed an unlocked metal gate in front of the easement in lieu of the rope barrier. Plaintiff's Ex. 12; Defendants' Ex. F.

Appellee sought injunctive and declaratory relief to clarify the scope of the easement. R. at 18–20.

B.  **Procedural History**

Appellants submitted a statement of the case summarizing the relevant procedural history, both in chapter 11 proceedings and in the underlying adversary proceeding, which Appellee adopts for purposes of this appeal. Doc. 6 at 5–8; Doc. 10 at vii. Thus, here is the agreed statement of the case:

### Statement of the Case - - Chapter 11 Proceedings

Colonial Penniman filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101, et seq., on March 24, 2016, and continues to operate its business of holding and developing real estate as 'debtor in possession' pursuant to 11 U.S.C. § 1107(a). The following motions, responses, hearings and orders pertinent to this appeal have been filed on the main case docket:

---

[2] The Bankruptcy Court incorporated these exhibits from March 24 hearings into the trial exhibits. See R. at 97.

- On May 18, 2016 [ch. 11 docket no. 22]. Mr. and Mrs. Williams filed a Motion for Relief from Automatic Stay (the "Williams Relief Motion"), as a protective response to several Debtor allegations (both oral and written) of alleged stay violations. At a preliminary hearing conducted on June 24, 2016, this Court denied the Williams Relief Motion based upon its determination that 'no case or controversy presently exists that is appropriate for adjudication.' This ruling is memorialized in an Order Denying Relief Motion entered on June 27, 2016 [ch. 11 docket no. 35].
- The Debtor nevertheless resumed this dispute by filing a Motion for Contempt and for Sanctions for Violation of the Automatic Stay (the 'Contempt Motion') on July 15, 2016 [ch. 11 docket no. 41], in response to which Mr. and Mrs. Williams filed their Response to Debtor's Motion for Contempt and for Sanctions for Violation of the Automatic Stay on July 27, 2016 [ch. 11 docket no. 47].
- Mr. and Mrs. Williams also filed on July 27, 2016 [ch. 11 docket no. 48] a Motion for Permissive Abstention of State-Law Issues Relating to Private-Easement Dispute, Pursuant to 28 U.S.C. § 1334(c)(1) (the "Original Abstention Motion"). The Debtor filed a Response to the Original Abstention Motion on September 15, 2016 [ch. 11 docket no. 67], as did the Debtor's designated representative Mr. C. Lewis Waltrip, II ("Mr. Waltrip") on September 16, 2016 [ch. 11 docket no. 68].
- The Bankruptcy Court conducted hearings on the Contempt Motion and on the Original Abstention Motion (and on the various responses) on September 23, 2016, at which it: (i) dismissed the Contempt Motion on procedural grounds; and (ii) accordingly denied the Abstention Motion as moot. Such rulings are memorialized in *Orders* entered respectively on November 21, 2016 [ch. 11 docket no. 85] and October 13, 2016 [ch. 11 docket no. 79].
- On November 15, 2016 [ch. 11 docket no. 83], Eastern Virginia Bank, successor by merger to Virginia Company Bank ("EVB"),[3] filed a Motion for Relief from Automatic Stay (the "EVB Relief Motion"), seeking permission for EVB to exercise its state-law rights of foreclosure against the Remaining Property. Colonial Penniman opposed EVB's request by its filing of a Response on November 29, 2016 [ch. 11 docket no. 90]. Hearings on the EVB Relief Motion were repeatedly continued [ch. 11 docket nos. 91, 107, 112, 119 & 129], until EVB's successor by merger voluntarily withdraw the EVB Relief Motion on August 31, 2017 [ch. 11 docket no. 131].
- On December 21, 2016 [ch. 11 docket no. 95] the local Office of the United States Trustee (the "U.S. Trustee") filed a renewed Motion to Convert or Dismiss Case (the "U.S. Trustee Conversion/Dismissal Motion"), seeking the conversion to chapter 7 or dismissal of the Debtor's chapter 11 case, which was a reiteration of a prior U.S. Trustee

---

[3] The agreed statement of the case also observes that Sonabank acquired EVB and sold its interest in the property at issue to Cadle Rock, LLC, who has not substituted itself for EVB in this case. Doc. 6 at 5 n. 2.

4

conversion/dismissal motion filed on August 16, 2016 [ch. 11 docket no. 55] and voluntarily withdrawn on September 2, 2016 [ch. 11 docket nos. 65, 66]. Hearings on the U.S. Trustee Conversion/Dismissal Motion were repeatedly continued [ch. 11 docket nos. 103, 108, 113, 120 & 130], until it was voluntarily withdrawn [ch. 11 docket no. 141].

## Statement of the Case - - Adversary Proceeding

Colonial Penniman commenced the underlying adversary proceeding, pursuant to Fed. R. Bank. P. 7001(7) & (9), on January 25, 2017 [ch. 11 docket no. 104; adv. proc. docket no. 1] by its filing of a Complaint for Temporary and Permanent Injunction, and Declaratory Relief (the 'Complaint'), from which ensued the following motions, responses, hearings and orders pertinent to this appeal:

- A Motion for Injunction and for Consolidation of Hearing with Trial on the Merits (the "Injunction Motion"), also filed by the Debtor on January 25, 2017 [adv. proc. docket no. 2].
- On February 13, 2017 [adv. proc. docket no. 8], EVB (on behalf of itself and its named trustees) filed an Answer of the EVB Defendants (the "EVB Answer").
- Mr. and Mrs. Williams filed on February 15, 2017 their Answer and Affirmative Defenses to the Complaint (the 'Williams Answer') [adv. proc. docket no.9] and their Response to the Injunction Motion (the "Injunction Response") [adv. proc. docket no. 10].
- Mr. and Mrs. Williams also filed on February 15, 2017 [adv. proc. docket no. 11] a Renewed Motion for Permissive Abstention of State-Law Issues Relating to Private- Easement Dispute, Pursuant to 28 U.S.C. 1334(c)(1) (the "Renewed Abstention Motion"). The Debtor filed its Response to the Renewal Abstention Motion on February 27, 2017 [adv. proc. docket no. 19].
- Also on February 15, 2017 [adv. proc. docket no. 13], Mr. and Mrs. Williams filed their Protective Demand for Jury Trial (the "Jury Demand") relative to the "noncore" issued raised in the Complaint and Injunction Motion.
- In each of their Williams Answer, Injunction Response, Renewed Abstention Motion and Jury Demand, Mr. and Mrs. Williams offered guarded statements concerning the "core" or "non-core" nature of this adversary proceeding, based primarily upon the indefinite nature of remedial relief being requested by the Debtor in its Complaint and accompanying Injunction Motion. At the direction of the Bankruptcy Court [adv. proc. docket no. 24], Mr. and Mrs. Williams filed on March 2, 2017 [adv. proc. docket no. 25] a Supplemental Statement Regarding Core v. Non-Core Jurisdiction (the "Supplemental Jurisdictional Statement"), to which the Debtor filed a Response on March 21, 2017 [adv. proc. docket no. 36].

5

- On March 24, 2017 [adv. proc. docket nos. 41-43], the Bankruptcy Court conducted combined hearings (collectively, the "March 24 Hearings") on each of (i) Injunction Motion and Injunction Response, (ii) the Renewed Abstention Motion and associated Debtor response, and (iii) the points raised in the Supplemental Jurisdictional Statement and associated Debtor response. At the conclusion of March 24 Hearings, the Bankruptcy Court:
  - accepted into evidence the testimony of multiple witnesses and the introduction of several exhibits offered separately by the Debtor and by Mr. and Mrs. Williams;
  - heard arguments from counsel for each of Colonial Penniman and Mr. and Mrs. Williams;
  - denied the Debtor's request for preliminary injunction, as memorialized in an <u>Order</u> entered on April 13, 2017 [adv. proc. docket no. 45]
  - denied Mr. and Mrs. Williams' request for permissive abstention, as memorialized in an <u>Order</u> entered May 5, 2017 [adv. proc. docket no. 51];
  - determined that the issues and requests for remedial relief properly raised in this adversary proceeding are "core" in nature; and
  - scheduled for further adjudication the unresolved matters raised in Complaint, the EVB Answer and the Williams Answer for trial on June 28, 2017 (the 'June 28 Trial').
- The Official Transcript of the March 24 Hearings [adv. proc. docket no. 49] (abbreviated hereinafter as Inj. Hrg. Tr.) reflects the admission into evidence of the following numbered Debtor exhibits (hereinafter 'Plaintiff's Exhibits'): 1, 2, 3, 7, 8, 9, 10, 11, 12 and 13 and the following lettered exhibits offered by Mr. and Mrs. Williams (hereinafter 'Defendants' Exhibits'): A, B, C, D, E, F, G, H and K, which is confirmed by the <u>Pretrial Scheduling Order</u> entered on March 31, 2017 [adv. proc. docket no. 41] and by the <u>Supplemental Pretrial Order</u> entered on April 18, 2017 [adv. proc. docket no. 47].
- At the June 28 Trial, the Bankruptcy Court heard further testimony from Mr. Waltrip and Mr. Williams, and also accepted into evidence Plaintiff's Exhibit 16 and Defendants' Exhibits L, M and N [adv. proc. docket no. 67]. An <u>Official Transcript</u> of the June 28 Trial (abbreviated hereafter as "Trial Tr.") was filed on June 29, 2017 [adv. proc. docket no. 63].
- The Bankruptcy Court entered the Appealed Order on August 18, 2017 [adv. proc. docket nos. 70 & 71], from which this appeal and the Debtor's cross-appeal are taken.

Doc. 6 at 5–8.

## II. STANDARD OF REVIEW

A district court reviews a bankruptcy court's factual findings for clear error and its legal findings de novo. In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir. 2005). It reviews mixed questions of fact and law de novo. In re Gordon Properties, LLC, 516 B.R. 323, 327 (E.D. Va. 2014) (citing Canal Corp. v. Finnman, 960 F.2d 396, 399 (4th Cir. 1992)). The court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## III. ANALYSIS

Although there are technically seven (7) issues on appeal, this entire case primarily relies on one (1) legal determination: what is the scope of the easement that Appellants granted Appellee?

**A. First Issue on Appeal: Whether the Bankruptcy Court erred in its determination of the scope of rights conferred under the governing Deed of Easement instrument, and the extent to which unnamed parties are entitled to exercise such rights.**

This issue is a question of law, and this Court determines the legal effect of the Deed of Easement de novo. See, e.g., Seabulk Offshore, Ltd v. American Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004) ("The interpretation of a written contract is a question of law . . . .") Both Parties apply Virginia law and cite the portions that they believe favor their interpretations. Virginia law states as follows:

> Unless otherwise provided for in the terms of an easement, the owner of a dominant estate shall not use an easement in a way that is not reasonably consistent with the uses contemplated by the grant of the easement, and the owner of the servient estate shall not engage in an activity or cause to be present any objects either upon the burdened land or immediately adjacent thereto which unreasonably interferes with the enjoyment of the easement by the owner of the dominant estate.

Va. Code Ann. § 55-50.1 (2018).[4] Thus, the dispute between the Parties concerns whether the terms of the easement specifically restrict uses and, if not, whether the uses contemplated by Appellee are "reasonably consistent with the uses contemplated by the grant of the easement."

The underlying Bankruptcy Court decision states as follows:

> Looking first at the four corners of the Deed of Easement, the Court finds that the document is silent as to whether the Debtor's reasonable invitees may use the Easement. Specifically, the Deed of Easement grants the right of ingress and egress to the Grantees, which the document defines to include the Debtor, its successors and assigns, and any subsequent purchaser of up to "three riverfront lots and one interior lot," but makes no reference to invitees. Debtor Ex. 2 at 1. Further, the document fails to indicate that this right to ingress and egress shall be for the exclusive use of the Grantees. The document is therefore silent with regards to whether anyone other than the Grantees may use the Easement. Accordingly, faced with a document that fails to specifically grant or deny use by the Debtor's reasonable invitees, use of the Easement shall be determined by the reasonable uses contemplated by the Deed of Easement.
>
> Given that the Deed of Easement clearly contemplates the subdivision, development, and sale of the Property by the Debtor, use of the Easement by the Debtor and its reasonable invitees consistent with this purpose shall be permitted. Indeed, the document expressly permits use of the Easement to develop the Property, including "laying, construct[ing] and maintaining underground utilities," id. at 1, and improving the gravel driveway, id. at 2. The intended development and sale of the Property is further evidenced by the language in the Deed of Easement referencing the subdivision of the Property into up to four lots. Id. at 1. Importantly, the Deed of Easement contemplates uses that maintain the Easement's current landscape conditions, prohibiting "destruction or mutilation of the trees currently lining the driveway." Id. at 2. While the Debtor may use the Easement for subdivision, sale, and development, uses for these purposes must be limited to those that do not disrupt the tranquility of the Easement's tree line, as doing so violates the terms of the Deed of Easement, and, further, could represent an overburdening of the servient estate, in violation of Virginia law. See Hayes v. Aquia Marina, Inc., 414 S.E.2d 820, 822 (Va. 1992).
>
> Accordingly, the Court concludes that use of the Easement extends to the Debtor and its reasonable invitees as is necessary for the sale and development of the Property, which is consistent with the uses contemplated by the Deed of Easement.

---

[4] Although the current version of this statute was enacted in 2007 and may have post-dated the easement, it is intended to be a restatement of Virginia law, and both Parties agree that it is controlling. See Doc. 6 at 21; Doc. 10 at 12.

R. at 436–437. The Bankruptcy Court also limited its findings to Appellee alone, concluding that Appellee lacked standing to pursue relief for subsequent owners not before the Court. Id. at 433.

The scope of the easement depends on how the Court reads the disputed phrase: "[t]he right of way shall only be for the benefit of the Grantors, or either, and Grantees." Deed of Easement at 2. The Court reads the plain text of this phrase as conveying all uses that are "for the benefit of" the Grantees. Such uses include building homes, travelling to and from home, inviting repairmen to the home, inviting guests to the home, or any other beneficial use reasonably anticipated by the owner of a private residence. The Deed of Easement contemplates developers using the easement, as it allows improving the driveway and installing and maintaining underground utilities. Id. at 2. Reading the disputed language to restrict anyone but Grantors or Grantees from using the easement, as Appellants argue, would lead to the conclusion that the Grantees must personally install underground utilities. The Court agrees with Appellee that reasonable interpretation of the phrase is the conveyance of beneficial uses consistent with the uses contemplated by the grant. Accordingly, the Court **FINDS** that the Deed of Easement permits all beneficial uses by Appellee. The Court's ruling does not affect the zoning requirements of James City County as they apply to the further subdivision of Appellee's property, or whether additional means of ingress or egress should be required now or later.

B.  **Second Issue on Appeal:** **Whether the Bankruptcy Court's ultimate finding of extra-textual rights under the Deed of Easement nullified its preceding jurisdictional decisions regarding (i) the "core" nature of the dispute, (ii) denial of abstention to the state court and (iii) denial of Mr. and Mrs. Williams' right to a jury trial.**

The Court's ruling upon the scope of the easement is not "extra-textual," and this issue is **MOOT**.

C.  **Third Issue on Appeal:** **Whether the Bankruptcy Court erred by disregarding the secondary nature of Colonial Penniman's easement rights over Mr. and Mrs. Williams property, and by disregarding fixed specifications for primary access elsewhere per the terms of a pre-existing plat and subsequent subdivision approval.**

The Court's ruling upon the easement **MOOTS** this issue in this proceeding, as the decision upon additional means of ingress and egress is best determined by James City County or by the Bankruptcy Court to the extent that such determination may affect the management of the bankruptcy estate.

D.  **Fourth Issue on Appeal:** **Whether the Bankruptcy Court erred by ignoring the effect of Colonial Penniman's affiliate's subsequent sale of development rights, which prevents alternate access to the Debtor's property across adjacent "Farm Property Routes".**

The Court's ruling upon the easement **MOOTS** this issue in this proceeding, as the decision upon additional means of ingress and egress is best determined by James City County or by the Bankruptcy Court to the extent that such determination may affect the management of the bankruptcy estate.

E.  **Fifth Issue on Appeal: Whether the Bankruptcy Court erred in finding Mr. and Mrs. Williams violated the automatic stay by placing an unlocked farm gate at the entrance of the subject easement, as permitted under Virginia law.**

At the hearing on this matter, the Parties represented that there is an ongoing dispute about whether Appellee failed to comply with the Bankruptcy Court's order to install a gate after Appellants removed their gate, or whether Appellee is at least being intentionally dilatory in the matter. The Court **REMANDS** all issues regarding the gates to the Bankruptcy Court.

F.  **First Issue on Cross-Appeal: Whether the Bankruptcy Court erred in declining to address subsequent dominant-estate owners' property rights in the easement on the grounds that such subsequent owners were not before the Court.**

The Parties agree that the rights in the Deed of Easement are transferable. See Doc. 10 at 9–11; Doc. 13 at 4–5. It conveys the easement to "the Grantee, its successors and assigns, and to the owners" of lots subdivided from the Property, collectively called the "Grantees." Deed of Easement. The Court **FINDS** that Appellee's successors in interest will have the same rights in the Deed of Easement as Appellee has. This ruling does not affect the ability of the Bankruptcy Court to manage the bankruptcy estate or to decide any issue not decided by this ruling, including imposing economic requirements in contracts for sale upon Appellees.

G.  **Second Issue on Cross-Appeal: Whether the Bankruptcy Court erred in its determination of the scope of rights conferred under the governing Deed of Easement instrument, and the extent to which unnamed parties are entitled to exercise such rights.**

The Parties agree that the rights in the Deed of Easement are transferable. See Doc. 10 at 9–11; Doc. 13 at 4–5. It conveys the easement to "the Grantee, its successors and assigns, and to the owners" of lots subdivided from the Property, collectively called the "Grantees." Deed of

Easement. The Court **FINDS** that Appellee's successors in interest will have the same rights in the Deed of Easement as Appellee has. This ruling does not affect the ability of the Bankruptcy Court to manage the bankruptcy estate or to decide any issue not decided by this ruling, including imposing economic requirements in contracts for sale upon Appellees.

### IV. CONCLUSION

The Court **FINDS**: (1) that the Deed of Easement permits all uses "for the benefit of" Appellee and (2) that Appellee's successors in interest will have the same rights in the Deed of Easement as Appellee has. For the reasons stated herein, the Court **REMANDS** this matter to the Bankruptcy Court for further proceedings regarding the management of the bankruptcy estate. The Court's rulings on these issues do not alter the zoning requirements of James City County as they apply to the Appellee's property, nor do they affect the ability of the bankruptcy court to decide any issue not decided in this ruling. The bankruptcy estate will proceed under the direction of the bankruptcy court.

The Clerk is **REQUESTED** to send a copy of this Opinion & Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 22, 2018